REID COLLINS & TSAI LLP
William T. Reid, IV
Angela J. Somers
R. Adam Swick
Yonah Jaffe
330 West 58th Street, Suite 403
New York, New York 10119
Tel.: (212) 344-5200

Craig A. Boneau (*pro hac vice* pending)
1301 S Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
Tel.: (512) 647-6100

*Counsel to the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| VL Assurance (Bermuda) Ltd., *et al.*,[1] | Case No. 21- 10682 |
| Debtors in Foreign Proceedings. | (Joint Administration Pending) |

**VERIFIED PETITION IN SUPPORT OF APPLICATIONS**
**FOR RECOGNITION OF FOREIGN MAIN PROCEEDINGS**
**PURSUANT TO 11 U.S.C. § 1517 AND ADDITIONAL RELIEF**

Michael W. Morrison and Mark B. Allitt (the "**Petitioners**") of KPMG Advisory Limited

("**KPMG**"), are the foreign representatives, as defined in section 101(24) of title 11 of the

United States Code (the "**Bankruptcy Code**"), of VL Assurance (Bermuda) Ltd. ("**VL**

**Assurance**"), Valor Group Ltd. ("**VGL**"), and Valor Management Ltd. ("**Valor Management**,"

and collectively with VL Assurance and VGL the "**VL Bermuda Debtors**"). The VL Bermuda

Debtors are debtors in foreign proceedings (the "**Bermuda Proceedings**"), as defined in

---

[1] VL Assurance (Bermuda) Ltd.'s Bermuda corporate registration number is 50052. Valor Group Ltd.'s Bermuda corporate registration number is 50799. Valor Management Ltd.'s Bermuda corporate registration number is 50053. Each entity has its registered officers located at 44 Par-la-Ville Road, Hamilton HM 08, Bermuda.

Bankruptcy Code section 101(23), that are currently before the Supreme Court of Bermuda (Commercial Court) (the "**Bermuda Court**").

The Petitioners submit this Verified Petition (the "**Verified Petition**") pursuant to sections 1515 and 1517 of the Bankruptcy Code in addition to the Official Form 401 Petitions (the "**Form Petitions**," and collectively with the Verified Petitions, the "**Petitions**"), seeking recognition of the Bermuda Proceedings as foreign main proceedings and additional relief under sections 1520 and 1521. As set forth below, this application is based upon the work that the Petitioners have performed in their role as Joint Provisional Liquidators ("**JPLs**").

## PRELIMINARY STATEMENT

1.      VL Assurance operated a portfolio of life insurance policies and wrote new Universal Life Policies until 2017. Valor Management had a management agreement with VL Assurance and provided its day-to-day management and administrative tasks from Bermuda. VGL is the sole shareholder of both VL Assurance and VL Management.

2.      Based on allegations by the United States Securities and Exchange Commission ("**SEC**") and the United States Department of Justice ("**DOJ**"), the VL Bermuda Debtors are victims of activity perpetrated between 2013 and 2016 by Jason Sugarman—a former director of the VL Bermuda Debtors—and others, including Jason Galanis, that ultimately led to the insolvency of the VL Bermuda Debtors.

3.      After being appointed to liquidate the VL Bermuda Debtors, Petitioners began tracking down and monetizing assets and investigating the activity that led to the demise of the VL Bermuda Debtors. Petitioners seek relief under Chapter 15 of the Bankruptcy Code to (a) access information and/or records maintained in the United States necessary to identify, evaluate, and preserve the VL Bermuda Debtors' assets; and (b) investigate and, if necessary, pursue potential sources of recovery in the United States. These recoveries will enable the VL Bermuda

Debtors to pay legitimate third-party creditors, including the beneficiaries of life insurance policies written by VL Assurance.

4.    Each of the VL Bermuda Debtors is organized under Bermuda law.  The VL Bermuda Debtors' registered offices are all located in Bermuda. Each of the VL Bermuda Debtors consistently represented to creditors and insureds that they were Bermuda entities.

5.    Petitioners were appointed in Bermuda as the JPLs of VL Assurance on March 25, 2020, and of its related entities, VGL and Valor Management, on December 18, 2020.

6.    Most of the VL Bermuda Debtors' activities were in Bermuda, and the Petitioners' activities on behalf of the VL Bermuda Debtors are in Bermuda.

7.    The Petitioners have commenced these Chapter 15 cases under section 1504 of the Bankruptcy Code by filing this Verified Petition, accompanied by all certifications, statements, lists, and documents required pursuant to sections 1515 and 1517 of the Bankruptcy Code and Rules 1007(a)(4) and 1008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

8.    The Petitioners satisfy the requirements for recognition of the Bermuda Proceedings as foreign main proceedings, as defined in section 1502(4) of the Bankruptcy Code, because the center of main interest—or "**COMI**"—of each VL Bermuda Debtor is Bermuda. The relief requested is necessary to effectively investigate, protect, administer, and realize the value of the VL Bermuda Debtors' assets.  Accordingly, the Petitioners respectfully request that the Court (i) recognize the Bermuda Proceedings as foreign main proceedings and (ii) grant the additional relief requested herein.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(P).

10.      Venue is proper under 28 U.S.C. § 1410(1) as the Debtors have assets located in New York as further described herein. Alternatively, venue before this Court is proper pursuant to 28 U.S.C. § 1410(3) as it is in the interests of justice and convenience of the parties.

11.      The statutory predicates for the relief requested herein are sections 108, 1504, 1507, 1509, 1515, 1516, 1517, 1520, and 1521 of the Bankruptcy Code and Bankruptcy Rule 1007.

## BACKGROUND

12.      The Court is respectfully referred to the accompanying Declaration of Mark B. Allitt (the "**Allitt Declaration**") and the Declaration of Kehinde George (the "**George Declaration**"), which set forth the relevant facts in greater detail.

13.      The information in this Verified Petition and the accompanying declarations is based upon the information that is presently available and reviewed.  The Petitioners are reviewing large quantities of data and records they received as a result of their appointments as JPLs of VGL and Valor Management.  Therefore, except as where otherwise indicated, the facts upon which this application is based are derived from the documents the Petitioners have been able to identify, collect, and review.

A.    **The VL Bermuda Debtors' Corporate Status and Location**

14.    VGL is a life insurance holding company incorporated under the Bermuda Companies Act 1981 (the "**Bermuda Companies Act**") on November 1, 2015 as an exempted company.[2] VGL is the sole shareholder of VL Assurance and Valor Management, which were both incorporated under the Bermuda Companies Act on February 26, 2015 as exempted companies.  The VL Bermuda Debtors' Certificates of Incorporation are attached collectively to the Allitt Declaration as **Exhibit A**.

15.    VL Assurance was (i) licensed under the Insurance Act 1978 of Bermuda (as amended) ("**Bermuda Insurance Act**") to write long-term insurance business as a Class C Insurer, (ii) registered under the Bermuda Segregated Accounts Companies Act 2000; and (iii) subject to the VL Assurance (Bermuda) Ltd. Act 2015, a Bermuda Private Act in relation to the establishment and terms governing VL Assurance's segregated accounts.   In 2015, VL Assurance acquired a portfolio of Fixed Account Universal ("**FAU**") life insurance policies, Variable Account Universal life insurance policies ("**VAU**"), and a small number of term life insurance policies and continued to write new FAU and VAU policies until 2017.  VL Assurance is regulated and supervised by the Bermuda Monetary Authority ("**BMA**").

16.    VL Assurance has a Management Services Agreement in place with Valor Management to provide all day-to-day management and administrative duties.  The Master Services Agreement is governed by Bermuda law, and any dispute under the agreement shall be arbitrated in Bermuda under the provisions of the Bermuda International Conciliation and Arbitration Act 1993.   VL Assurance had no employees; its managerial and day-to-day

---

[2] VGL was originally incorporated as Nevada corporation on May 5, 2013, but moved to the British Virgin Islands on October 25, 2013, and then to Bermuda on November 1, 2015.

operations were provided by Bermudan employees of Valor Management. Valor Management was incorporated under the Bermuda Companies Act as an exempted company to act as a services company. Valor Management also provided similar services to VGL from Bermuda.

17.     The VL Bermuda Debtors' registered offices are in Bermuda. Prior to the appointment of the JPLs, VGL's registered office was Victoria Place—5th Floor, 31 Victoria Street, Hamilton HM 10, Bermuda. Since its inception, Valor Management has always had the same registered office as VGL. VL Assurance's registered office was at 44 Church Street, Hamilton, HM 12 Bermuda. Once the Bermuda Court appointed the Petitioners as JPLs, Petitioners changed the registered offices of each of the VL Bermuda Debtors to 4 Par-la-Ville Road, Hamilton, HM 08 Bermuda.

18.     Since July 4, 2018, two individuals have served as the VL Bermuda Debtors' only directors, David Ezekiel and Mark Waddington. Both individuals currently reside in and have resided in Bermuda for over 15 years. Currently, David Ezekiel and Mark Waddington are the directors of VL Assurance; David Ezekiel is the sole director of VGL and Valor Management. Although David Ezekiel and Mark Waddington are directors of the VL Bermuda Debtors, pursuant to the Liquidation Orders (defined below), the Petitioners have exclusive authority to act on the VL Bermuda Debtors' behalf.[3] Under Bermuda law, upon the appointment of a provisional liquidator, all of the powers of the directors over the company cease and are assumed by the provisional liquidator unless otherwise ordered by the Bermuda Court, which is not the case here.[4] Accordingly, the power to act in the name of the VL Bermuda Debtors is now vested

---

[3] George Declaration ¶ 30.

[4] *Id.*

in the Petitioners.[5]   The Petitioners are the only persons who can speak for the VL Bermuda

Debtors and the only persons who have the authority and power to give instructions on behalf of

the VL Bermuda Debtors.[6]

19.    David Ezekiel has always been a director of the VL Bermuda Debtors.   Mark

Waddington was appointed on July 4, 2018.   Prior to that date—in addition to David Ezekiel—

the VL Bermuda Debtors had directors located in the United States, primarily in New York and

California. These U.S.-based directors all resigned following the allegations of fraud from the

SEC and DOJ described in more detail below.   The former U.S. directors of VL Assurance were

Devon Archer, Louis Zuckerbraun, and Jason Sugarman.   These directors resigned on May 27,

2016, October 27, 2016, and July 4, 2018, respectively.   The former U.S. directors of VGL were

Hugh Dunkerley and Devon Archer.   Hugh Dunkerley and Devon Archer resigned on May 13,

2016 and May 27, 2016, respectively.   The former U.S. directors of Valor Management were

Devon Archer, Louis Zuckerbraun, and Jason Sugarman.   Devon Archer, Louis Zuckerbraun,

and Jason Sugarman resigned on May 25, 2016, October 21, 2016, and July 4, 2018,

respectively.

20.    While directors were allowed to dial into board meetings by telephone, VGL's

and VL Assurance's board meetings were in person and took place in Bermuda.   Valor

Management operated primarily by written resolutions.   Since July 4, 2018, every aspect of the

VL Bermuda Debtors' business decisions, operations, and management have occurred in

Bermuda.   At all relevant times, the VL Bermuda Debtors held themselves out to be Bermuda

entities.   VL Assurance's annual statements to insureds identified VL Assurance as a Bermudan

---

[5] *Id.*

[6] *Id.*

company located at "44 Church Street, 1st Floor, Hamilton, HM 12 Bermuda." From the diligence performed by the Petitioners thus far, contracts with third parties involving the VL Bermuda Debtors identified them as Bermuda entities.

## B.    General Overview of the VL Bermuda Debtors' Corporate Structure and Operations

### 1.    VL Assurance

21.    On April 13, 2015, VL Assurance merged with Bermuda International Insurance Services Limited ("**BIISL**").[7]  VL Assurance was the surviving company following the merger. VL Assurance was licensed by the BMA as a Class C insurance company under the Bermuda Insurance Act and as a segregated accounts company under the SAC Act which status remains effective; VL Assurance has to date paid all relevant annual fees.[8]

22.    Shortly after the merger, VL Assurance acquired a portfolio of FAU, VAU, and term life insurance policies. VL Assurance continued to write insurance until 2017.  Upon Petitioners' appointment as JPLs, VL Assurance had thirty-seven FAU policies, three VAU policies, and seven term policies.  VL Assurance's total potential death benefit liability was over $290 million.  The locations of each insured vary widely across the globe, but one is a Bermudian resident.

23.    VL Assurance's liability for each FAU and VAU policy is linked to a "segregated account" associated with that specific policy.  While the Term Policies were written through VL Assurance's general account at HSBC (Bermuda), VL Assurance's liability for each FAU and

---

[7] VL Assurance was established to amalgamate with BIISL, a Bermuda licensed Class C Insurer originally owned by BF&M Group. BIISL was licensed as a long-term insurer under the Insurance Act and a segregated accounts company under the Segregated Account Companies Act 2000 ("**SAC Act**").  BIISL was provided a Certificate of Registration under the SAC Act by the Bermuda Registrar of Companies, effective October 11, 2006.

[8] The Registrar of Companies provided VL Assurance a Certificate of Registration under the SAC Act effective April 13, 2015.

VAU policy is linked to a "segregated account" associated with that specific policy.    Some policies had their own separate accounts or were given an accounted-for share of a combined account. The assets assigned to the segregated accounts for FAU and VAU policies are held at Bank of New York Mellon in New York ("**BNYM**"), VP Bank AG (Liechtenstein), Sarasin Bank (Hong Kong Branch), Credit Suisse (Singapore Branch), and HSBC (Bermuda).    VL Assurance has 100% reinsurance for all liability in excess of the "fund value" plus VL Assurance's retention per policy which is a maximum of EUR 850,000 per policy or USD$1 million for all others.    "Fund value" is premiums paid, plus income generated using the crediting rate in the policy, reduced by applicable charges and other fees.

24.    In addition to the segregated accounts, VL Assurance holds several accounts at HSBC Bermuda that collectively operate as VL Assurance's general account.    Valor Management has one operating account at another Bermuda-based bank, the Bank of N.T. Butterfield and Son Limited ("**BNTB**"), and VGL has three accounts at BNTB.    The amount of cash or other assets in these accounts constantly fluctuates as Petitioners operate the VL Bermuda Debtors.

**2.    Valor Management**

25.    Valor Management was established on the same date as VL Assurance. [9]    Valor Management employed four to five individuals at any one time primarily to manage and serve the needs of VL Assurance and VGL. In its role, Valor Management—from Bermuda—was primarily responsible for the day-to-day operations of VL Assurance, including:

---

[9] The BMA approved Valor Management as VL Assurance's Principal Representative and Insurance Manager on July 3, 2015.

- acting as VL Assurance's Principal Representative as set out in the Bermuda Insurance Act;

- underwriting and administering all new and existing insurance business;

- designing and establishing trust accounts for insurance and annuity policies;

- opening, maintaining, and operating bank and custody accounts;

- managing relationships with financial institutions and other third-party service providers;

- administering, supplying, and managing VL Assurance's office;

- handling all regulatory matter, including licensing, filings, and inquiries; and

- maintaining books and records.

26.     Valor Management also provided duties for VGL from Bermuda.  For example, Valor Management maintained and managed VGL's books and records in Bermuda.  In short, the VL Bermuda Debtors operations took place and are taking place in Bermuda.

27.     On March 30, 2020, the BMA revoked Valor Management's Insurance Agent license.  As of that time, Valor Management had only been providing services to KPMG in their capacity as JPLs.

**3.     VGL**

28.     As shown in the corporate organization chart attached to the Allitt Declaration as **Exhibit B**, VGL is a life insurance holding company and owns directly or indirectly:

- 100% of the shares of VL Assurance, a foreign debtor in this case and a Bermuda-based life insurance company (described in more detail below).

- 100% of the shares of Valor Management, a foreign debtor in this case and a Bermuda-based services company established primarily to provide management services to VL Assurance.

- 100% of the shares of Wealth Assurance AG ("**WAB**"), and 58.6% of Wealth Assurance AG ("**WAAG**").  WAB itself owns the remaining 41.4% of WAAG.  WAG also owns 100% of the shares of Valorlife Insurance AG ("**Valorlife**," together with WAAG, the "**Liechtenstein Entities**").  The Liechtenstein Entities are currently controlled by a

Special Administrator appointed by the Financial Market Authority of Liechtenstein ("**FMA**").

- 100% of the shares of VL Assurance Holdings Inc. ("**VL Barbados**"), an entity based in Barbados, through its ownership of 100% of the shares of VL Assurance Holdings LLC, a U.S. company. Both of these entities have been dormant for years and have minimal value.

## C. Allegations of Fraud and Transactions that Decreased the VL Bermuda Debtors' Liquidity

29.     In mid-2016 and 2019, the SEC and DOJ filed complaints alleging that the VL Bermuda Debtors were the victims of a complex and large scheme to divert proceeds of sham Native American bonds (the "**Tribal Bonds**") to certain individuals and entities, including former directors and officers of the VL Bermuda Debtors.[10]

30.     The United States Attorney's Office for the Southern District of New York filed charges on May 9, 2016 against Jason Galanis, Devon Archer, Bevan Cooney, Hugh Dunkerley, John Galanis, Gary Hirst, Francisco Martin, and Michelle Morton.[11] Petitioners understand that each of the named defendants either pled guilty to criminal charges or were convicted of those charges at trial. From what the Petitioners understand, Jason Galanis is currently serving jail time for his role in the Tribal Bonds scheme regarding the VL Bermuda Debtors as well as allegations relating to Gerova Financial Group and Gerova Holdings Ltd., two Bermudan entities that were subject to joint provisional liquidations in Bermuda that were recognized as foreign main proceedings by this Court.[12]

---

[10] SEC Complaint I (defined below) ¶¶ 1-9.

[11] *See United States v. Archer*, No. 16ccr-371 (RA) (S.D.N.Y.) (the "**Criminal Complaint**").

[12] *See Gerova Financial Group, Ltd.*, No. 12-13641 (MEW) (Bankr. S.D.N.Y. Oct. 11, 2012) (Docket No. 11).

31.     On May 11, 2016, the SEC filed a parallel complaint against the same defendants, except for Michelle Morton.[13]  On June 26, 2019, the SEC filed another complaint specifically against Jason Sugarman (collectively with Jason Galanis, Devon Archer, Bevan Cooney, Hugh Dunkerley, John Galanis, Gary Hirst, Francisco Martin, and Michelle Morton (the "**Defendants**"), a former director of VGL and VL Assurance, regarding his involvement in the scheme.[14]

32.     The Complaints allege an elaborate fraud that victimized and utilized the VL Bermuda Debtors to conduct a series of transactions that appear to be for the benefit of the former directors of the VL Bermuda Debtors.  As explained by the SEC, the scheme kicked off in March 2014 when Galanis:

> convinced a Native American Tribal Corporation, the Wakpamni Lake Community Corporation, affiliated with the Wakpamni District of the Oglala Siou" Nation, whose members live in one of the poorest regions in the United States (the "WLCC"), to become the issuer of the limited recourse bonds that they had already structured and developed.  From August 2014 to April 2015, Jason Galanis and John Galanis arranged for the WLCC to issue three tranches of Tribal Bonds.[15]

33.     Also as explained by the SEC, "[t]he proceeds of the [Tribal] Bond sales were supposed to be used by the Tribal Corporation to purchase an annuity as an investment that could generate sufficient income to pay interest to bond holders.[16]  But "Galanis and Sugarman—who were referred to by other scheme participants as the "two Jasons" and "50/50 business

---

[13] *Sec. & Exch. Comm'n v. Archer*, No.16CV3505 (WHP) (S.D.N.Y.) [Docket No. 1] ("**SEC Complaint I**").

[14] *Sec. & Exch. Comm'n v. Sugarman*, 19CV5998 (S.D.N.Y.) (Docket No. 1) ( "**SEC Complaint II**," and together with the SEC Complaint I and the Criminal Complaint, the "**Complaints**").

[15] SEC Complaint I ¶ 3.

[16] SEC Complaint I ¶ 4

partners"—intended to use the proceeds from the issuance of the Tribal Bonds for their own purposes and benefit."[17]

34.    The second "tranche" of the Tribal Bonds (referred to as the "Rosemont Bond"— supposedly worth $16.7 million) directly involved VL Assurance.  The SEC Complaint II alleges that after Sugarman attended meetings in New York, the second tranche was transferred to a New York City-based brokerage account in VL Assurance's name.[18]  According to David Ezekiel, Jason Sugarman then used the Rosemont Bond to buy VL Assurance by having the bond satisfy VL Assurance's minimal net capital and other regulatory requirements.  Sugarman then implemented a plan in which "VL Assurance could liquidate almost $14 million of the former BIISL's statutory capital and use the resulting cash to pay its prior owners the acquisition price without running afoul of regulatory capital requirements."[19]

35.    The Petitioners are currently investigating the SEC's and DOJ's allegations in the Complaints.   Petitioners have also been investigating evidence that some of the Defendants harmed the VL Bermuda Debtors by restricting their liquidity, not only from the sham Tribal Bonds, but also from replacing (i) liquid assets with illiquid assets in a subset of the segregated accounts held by VL Assurance, and (ii) the sham Tribal Bonds with other illiquid and potentially fraudulent assets involving IIG Capital, LLC ("**IIG Capital**"), a New York entity.

1.    **Post-Merger Transactions using Segregated Accounts Fund**

36.    One subset of VL Assurance's FAU and VAU policies have their own bank account assigned to their segregated account.  Another subset—twenty-four FAU policies (the

---

[17] *Id.* ¶ 5.

[18] *See* SEC Complaint II ¶¶ 84-89.

[19] *Id.* ¶ 86.

"**Combined Account Policies**")—collectively held assets in a combined bank account originally at HSBC Global Asset Management in New York. Between 2015 and 2016, these assets were moved to accounts at a New York branch of Morgan Stanley and then to BNYM (the "**BNYM Account**"). In 2020, shortly before Petitioners' appointment, most of the assets in the BNYM Account were transferred to an account at HSBC (Bermuda) (the "**HSBC Segregated Account**").[20]   On the date of the merger between BIISL and VL Assurance in 2015, the Combined Account held $32.5 million in bonds and accrued coupon payments and $2.5 million in cash. The bond portfolio was comprised exclusively of highly-rated corporate and government bonds. Between 2015 and 2016, however, the liquid assets were exchanged for various illiquid assets, including:

- **Promissory Note from VGL ("VGL Note").** VGL currently owes VL Assurance approximately $22,373,505 pursuant to a promissory note under Bermuda law issued in exchange for payments from the Combined Segregated Account. VGL's principal assets are its interest in the Liechtenstein Entities. As explained in more detail below, Petitioners have been constant contact with the Special Administrator over these entities and, while some money may eventually flow to VGL and thus to VL Assurance, the Petitioners do not believe VGL will recover enough to repay the VGL Note.[21]

- **Promissory Note from Inversiones Balesia S.A.C. ("Balesia").** Balesia is a Peruvian company that currently owes VL Assurance approximately $6,422,000 under a promissory note under Peruvian law (the "**Balesia Note**"). As explained below, Petitioners are trying to recover from Balesia, but do not believe it will be able to repay the Balesia note in full.

- **LAL Assignment and Assumption Agreement ("LAL Agreement").** VL Assurance is owed a remaining $560,000 by Luxury Assets Lending LLC ("**LAL**") pursuant to the LAL Agreement, which is governed under California

---

[20] For ease of reference, the accounts discussed in paragraph 36 are collectively referred to as the "**Combined Accounts**." The BNYM Account currently holds approximately $1,000 in cash and shares and interests worth approximately $5,000. The HSBC Segregated Account holds the remaining assets attributed to the Combined Account Policies, including approximately $6.1 million.

[21] VGL also owes Valor Management $823,000 for management fees.

law.  VL Assurance originally loaned LAL $1,020,000.  Petitioners believe they will be able to recover further funds from LAL, but not the full amount owed.

- **Code Rebel.**  VL Assurance purchased shares in an entity named Code Rebel on April 22, 2015.  These shares are held at BNYM.  According to SEC filings, Code Rebel was an entity related to Jason Galanis.

- **Merriman Holdings Inc. ("Merriman").**    On April 18, 2015 VL Assurance paid from the Combined FAU Account $333,333 for shares in Merriman, a company formed by Jason Sugarman, a director of VL Assurance and VGL at the time.  According to publicly available information, Merriman has little to no value.  Indeed, VL Assurance wrote the Merriman shares off completely in 2016.

**2.    IIG Agreement**

37.    Once the Tribal Bonds were exposed as a sham by the SEC and DOJ, VL Assurance wrote off the entire value of the Tribal Bonds.  As a result, VL Assurance needed replacement capital to satisfy its minimum solvency requirements.  On August 15, 2016, VL Assurance entered into a participation agreement (the "**IIG Agreement**") with IIG Capital, a New York entity.  Under the IIG Agreement, IIG Trade Finance LLC ("**IIG TOF**"), a Curacao entity, received 12,500 preference shares in VL Assurance in exchange for an assignment of loan proceeds owed by various borrowers allegedly worth $12.5 million.  The IIG Agreement is governed by New York law. Any controversy or claim arising out of or relating to it must be settled by arbitration by the International Court of Arbitration of the International Chamber of Commerce in New York.  The loan appears illiquid, and Petitioners do not believe a full recovery on the loans is likely.   From Petitioners' investigation to date, it appears that Jason Sugarman had an inside relationship with the IIG entities.

**D.      The VL Bermuda Debtors Descent into Liquidation**

38.     In May 2016, following the filing of the Criminal Complaint and SEC Complaint I, Devon Archer and Hugh Dunkerley resigned as directors of the VL Bermuda Debtors.[22] According to David Ezekiel, the remaining director, the Company then "immediately took steps to sever all dealings with those accused" of misdeeds.  VL Assurance deemed the Tribal Bond worthless and met with the BMA on June 21, 2016 to discuss the discovery of the fraud.[23]  In July 2016, the BMA revoked VL Assurance's ability to write new insurance. Although the BMA briefly reinstated VL Assurance's ability to write new policies based on the IIG Agreement, the BMA ultimately forced VL Assurance to stop writing new policies in 2017.

39.     VL Assurance's liquidity crisis came to a head in July 2019 when a policyholder made the first claim ever on a VL Assurance policy—a death claim for £8 million.  While reinsurance proceeds were available for this claim, the segregated account associated with this policy was part of the Combined Accounts and thus insolvent and could not pay the claim.

40.     Following VL Assurance's inability to pay the sole death claim made by a policyholder and the continued inability to liquidate assets, VL Assurance's remaining directors caused VL Assurance to petition (the "**VL Assurance Petition**") the Bermuda Court to wind up VL Assurance and filed an application to appoint Petitioners, both managing directors of KPMG, as JPLs over VL Assurance and receivers over VL Assurance's segregated accounts.  No objections were filed and on March 25, 2020, the Bermuda Court appointed the Petitioners as JPLs over VL Assurance and receivers over its segregated accounts, and on October 30, 2020,

---

[22] Petitioners assume that Jason Sugarman remained as a director until July 4, 2018 since he was not yet named, implicated, or even mentioned regarding the Tribal Bond Scheme in the SEC Complaint I or Criminal Complaint.

[23] *Id.* ¶ 22.

the Bermuda Court entered an order to wind up VL Assurance, which also continued Petitioners as JPLs and receivers (collectively, the "**VL Assurance Winding-Up Orders**").   On October 13, 2020, VGL and Valor Management presented petitions (the "**VGL and Valor Petitions**") in the Bermuda Court to wind up VGL and Valor Management and appoint the same JPLs over them.   Once again, no objections were filed, and the Court granted the VGL and Valor Petitions on December 18, 2020 making orders to wind up VGL and Valor and appoint Petitioners as JPLs over VGL and Valor Management (the "**VGL and Valor Winding-Up Orders**" and collectively with the VL Assurance Winding-Up Orders, the "**Winding-Up Orders**").   On April 5, 2021, the Bermuda Court entered further orders, authorizing the Petitioners to seek relief under Chapter 15 of the Bankruptcy Code (the "**Bermuda Chapter 15 Orders**," collectively with the Winding-Up Orders, the "**Liquidation Orders**").   Certified copies of the Liquidation Orders are attached to the Form Petitions.

### E.   The Petitioners' Liquidation Activities in the Bermuda

41.   The Petitioners are in the midst of a complex liquidation process in Bermuda for which the Petitioners are the sole persons authorized to act on behalf of the VL Bermuda Debtors.   Petitioners are committed to recovering available funds to pay legitimate creditors, including the beneficiaries of VL Assurance's policies.

42.   Since their appointment, the Petitioners have taken over the functions of administrator, accountant, and management.   Petitioners moved the VL Bermuda Debtors' registered offices to 4 Par-la-Ville Road, Hamilton, HM 08 Bermuda.   They have assured that the VL Bermuda Debtors' reinsurance premiums were paid and have retained multiple law firms and other professionals to assist with the liquidation of the VL Bermuda Debtors.   Petitioners have also operated VL Assurance's insurance business, including managing the segregated accounts. As part of these duties, Petitioners opened ancillary proceedings in Hong Kong.   Although Hong

Kong has not adopted the Model Law on Cross-Border Insolvency, the Hong Kong court recognized the Bermuda Proceedings and granted Petitioners ancillary relief in Hong Kong on the basis that the Bermuda Proceedings were collective proceedings and taking place in VL Assurance's country of incorporation.

43.     Some highlights of the work that the Petitioners have performed on behalf of the VL Bermuda Debtors from Bermuda are as follows:

### 1.   Books and Records

44.     Petitioners are taking possession of digital and physical copies of the books, records, bank accounts, and all other property to which the VL Bermuda Debtors are entitled, in Bermuda.   Immediately upon appointment as JPLs, the Petitioners contacted shareholders, directors, former directors, insureds, and third parties to:  (i) advise them of the joint provisional liquidations; (ii) take control of any assets; and (iii) request delivery of books and records.

45.     The Petitioners have received official books and records of the VL Bermuda Debtors from their corporate secretary, Ocorian Services (Bermuda) Ltd, located in Bermuda. Petitioners have also received policy records, claims files, and accounting records.[24]

46.     Each of VL Bermuda Debtor has placed funds in its US counsel's client trust account at TD Ameritrade in New York, New York as retainers where they shall remain pending until the final billing in these proceedings.

47.     Although the Petitioners have reviewed the books and records received to date, which have helped develop their understanding of the VL Bermuda Debtors' financial position.

---

[24] Valor Management originally possessed these documents and turned them over to Petitioners, prior to Valor Management's own Liquidation Order, on May 8, 2020.

Petitioners still need to recover documents from various parties, including United States-based individuals and entities, including former directors.

### 2.      Coordination with Insureds and Creditors

48.      On March 26, 2020—the day after the Petitioners' appointment as JPLs over VL Assurance—the Petitioners notified all distributors and policy owners of their appointment.  A copy of this notification is attached to the Allitt Declaration as **Exhibit D.**  Petitioners then conducted a series of conversations with the agents/distributors of the policies who helped place the policies, named policyowners, and underlying insured individuals.  Petitioners' primary correspondence with policy holders is through their agents/distributors via email.  Petitioners then compiled a Frequently Asked Question document and made it available to all distributors, policyholders, creditors, and other parties in interest.  This led to Petitioners having numerous conversations via phone and email with agents and distributors to answer questions and explain the details of their appointment.   Indeed, Petitioners continue to have frequent and open conversations with distributors.

### 3.      Investigations

49.      Petitioners are investigating numerous aspects of the VL Bermuda Debtors.  *First*, Petitioners have spent numerous hours investigating VL Assurance's insurance business. Petitioners retained Bermuda and English counsel to help confirm that VL Assurance established and maintained segregated accounts.

50.      *Second*, Petitioners have begun investigating the VL Bermuda Debtors current and former directors.  Petitioners have been in constant contact with the current directors, and they have also had numerous conversations primarily via email with the former directors, including Jason Sugarman. The VL Bermuda Debtors may have viable causes of action against the directors based on the allegations in the Complaints and Petitioners' own investigations to date.

51.    *Third*, Petitioners have been investigating the VL Bermuda Debtors' assets, as explained in more detail below.

### 4.    Asset Realization and Post-Liquidation Activities

52.    Over the last year, the Petitioners have been evaluating and realizing assets on behalf of originally VL Assurance, and as of December 2020, VGL and Valor Management. While Petitioners' investigation into the VL Bermuda Debtors' assets is ongoing, the VL Bermuda Debtors assets include the following:

### a.    IIG Participation Agreement

53.    On September 3, 2019, the Curacao Court of Appeal entered a judgment declaring IIG TOF bankrupt and appointing Valerie P. Maria ("**Maria**") as the Trustee in bankruptcy initiating IIG TOF's Curacao bankruptcy proceeding (the "**Curacao Proceeding**"). This Court recognized the Curacao Proceeding as a foreign main proceeding on April 3, 2020.[25] Maria was recognized as IIG TOF's foreign representative.[26]

54.    Petitioners have reviewed the pleadings in the Curacao Proceeding and the IIG TOF Chapter 15; heldconversations with Maria about the likelihood of any recoveries for VL Assurance under the IIG Participation Agreement; held conversations with a former consultant to IIG Capital; and reviewed a related SEC complaint alleging a string of frauds by IIG-related entities. Petitioners are investigating methods of recovery based on New York law.

### b.    Liechtenstein Entities

55.    As stated above, besides VGL's ownership of VL Assurance and Valor Management, VGL owns the Liechtenstein Entities—insurance companies, which are currently

---

[25] IIG Trade Opportunities Fund N.V., Case No. 20-10666-mew) ("**IIG TOF Chapter 15**"), Order Granting Recognition and Other Relief in Aid of Foreign Main Proceeding ¶ 2 [ECF 23] (Bankr. S.D.N.Y Apr 3, 2020).

[26] *Id.* ¶ 3.

controlled by a Special Administrator, Armin Oberdorf of Ernst & Young Zurich, at the direction of the Liechtenstein FMA.   In addition to appointing the Special Administrator, the FMA directed the transfer of the Liechtenstein Entities' insurance portfolio to Skania Leben, now known as Youplus Assurance Ag ("**Youplus**").   From what the Petitioners understand, Youplus is a reputable Liechtenstein insurance company.

56.     To extract liquidity from the Liechtenstein Entities, Petitioners are working with the Special Administrator and professionals to finalize the policy transfers and concluding the lawsuit.

### c.     The Balesia Note

57.     VL Assurance is owed approximately $6.4 million on the Balesia Note.   Based on Petitioners' investigations to date, the Balesia Note appears to have been a speculative investment at best.[27]   Nonetheless, Petitioners are exploring all avenues to recover any amounts under the Balesia Note, including potential causes of action.

### d.     LAL Agreement

58.     VL Assurance entered into the LAL Agreement for $900,000.   The LAL Agreement was securitized by LAL's loans to Luxury Asset Purchasing International LLC to purchase three boats.   Two boats have been sold for a total of $340,000, reducing LAL's debt to VL Assurance to $560,000.   Petitioners have hired a broker to sell the third boat, which hails from New York.   Petitioners are currently exploring potential offers.

---

[27] Petitioners have spoken with current and former directors and a member of the Balesia management team regarding the Balesia Note. Balesia's principal assets are telecommunication towers in Peru.   VL Assurance entered into a separate security agreement with Balesia on June 9, 2015, providing VL Assurance with a security interest in 34 telecommunication sites owed by Balesia.   Balesia provided VL Assurance with a letter of intent of a third party who intended to purchase the 34 sites VL Assurance holds a security interest in.   However, Petitioners doubt a sale will occur soon based on their investigation.

**RELIEF REQUESTED**

59.    The Petitioners, as duly organized foreign representatives of the VL Bermuda Debtors, seek recognition of the Bermuda Proceedings as foreign main proceedings (or alternatively as foreign nonmain proceedings) pursuant to sections 1504, 1507, 1509, 1515, and 1517, and seek relief as of right under sections 108 and 1520 and certain additional relief available under section 1521.

60.    Specifically, the Petitioners seek entry of an order substantially in the form annexed hereto as **Exhibit A** granting the following relief as necessary to best advance the winding-up of the VL Bermuda Debtors in the Bermuda Proceedings:

   a.  recognizing the Bermuda Proceedings as foreign main proceedings as defined in section 1502(4);

   b.  granting relief pursuant to sections 108 and 1520;

   c.  granting additional relief as authorized by section 1521, including, without limitation:

      i.   authorizing the Petitioners to issue subpoenas, examine witnesses, take 2004 examinations, seek turnover under section 542, take evidence, seek production of documents and information concerning the assets, affairs, rights, obligations, or liabilities of the VL Bermuda Debtors for the purposes of locating and analyzing the VL Bermuda Debtors' assets and liabilities, and obtain recovery of the VL Bermuda Debtors' books and records;

      ii.  entrusting the Petitioners with the administration and realization of all of the VL Bermuda Debtors' assets that are located within the territorial jurisdiction of the United States, including, without limitation, any and all claims and causes of action belonging to the VL Bermuda Debtors (including avoidance actions under Bermuda law); and

      iii. awarding the Petitioners such other and further relief as this Court may deem just and proper.

## BASIS FOR SUCH RELIEF

### A.    The Petitioners Have Satisfied the Requirements for Recognition

61.    As set forth in the accompanying Allitt Declaration and George Declaration, the Bermuda Proceedings are entitled to recognition under sections 109(a) and  1517 of the Bankruptcy Code because:

> a.    The VL Bermuda Debtors meet the general eligibility requirements of section 109(a) of the Bankruptcy Code.
>
> b.    The Bermuda Proceedings are (i) foreign proceedings within the meaning of section 101(23) of the Bankruptcy Code; (ii) foreign main proceedings within the meaning of section 1502(4) of the Bankruptcy Code because the Bermuda Proceedings are being conducted in the location of the VL Bermuda Debtors' COMI; and (iii) in the alternative, foreign nonmain proceedings because they are pending in a location where the VL Bermuda Debtors' have an establishment;
>
> c.    the Petitioners are foreign representatives within the meaning of section 101(24) of the Bankruptcy Code; and
>
> d.    the VL Bermuda Debtors' Chapter 15 Petitions meet the requirements of section 1515 of the Bankruptcy Code.

62.    Recognizing the Bermuda Proceedings would not be manifestly contrary to the public policy of the United States under section 1506 of the Bankruptcy Code.  In fact, granting recognition would further the stated policy goals of Chapter 15 by promoting cooperation between courts, allowing for the fair and efficient administration of cross-border insolvencies, and facilitating the protection and maximization of the VL Bermuda Debtors' assets.

63.    Indeed, Chapter 15 recognition will enhance and facilitate the ability of the Petitioners to fulfill their duties to investigate the affairs of the VL Bermuda Debtors and realize and distribute the VL Bermuda Debtors' assets in accordance with Bermudan insolvency law. Specifically, Chapter 15 recognition will allow the Petitioners to (i) access information and/or records maintained in the United States necessary to identify, evaluate, and preserve the VL

Bermuda Debtors' assets; (ii) investigate and, if necessary, pursue potential sources of recovery in the United States; and (iii) continue to facilitate the efficient administration of the VL Bermuda Debtors' assets in one proceeding so as to prevent a piecemeal disposition or degradation of assets that would undermine the Bermuda Proceedings and harm the VL Bermuda Debtors; creditors.

64.    The following documents are annexed hereto in support of this Verified Petition, as required by section 1515 and Bankruptcy Rules 1007 and 1008:

a.    pursuant to section 1515(b), certified copies of the Liquidation Orders of the Bermuda Court appointing the Petitioners as JPLs for the VL Bermuda Debtors, annexed to the Form Petitions;

b.    pursuant to 11 U.S.C. § 1515(c), statements certifying, among other things, the other  foreign proceedings concerning the VL Bermuda Debtors known to the Petitioners, annexed to the Form Petitions;

c.    pursuant to Bankruptcy Rule 1007(a)(4), annexed as to the Petitions are:

iv.    corporate ownership statements containing the information described in Bankruptcy Rule 7007.1;

v.    lists containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the VL Bermuda Debtors;

vi.    lists of all known parties to litigation and/or arbitration pending in the United States in which the VL Bermuda Debtors are a party at the time of the filing of the Petitions; and

vii.    lists of all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code.

d.    pursuant to 28 U.S.C. § 1746, this Verified Petition contains a verification by the Petitioners regarding the facts contained herein.

65.    Because (i) the Bermuda Proceedings are foreign proceedings under section 101(23), (ii) the Petitioners are foreign representatives under section 101(24), (iii) the VL Bermuda Debtors' COMI lies in Bermuda, (iv) the Petitioners have complied with all requirements of section 1515 and Bankruptcy Rule 1007(a)(4), and (v) recognition of the

Bermuda Proceedings would not be contrary to public policy under section 1506, the Petitioners are entitled to entry of an order recognizing the Bermuda Proceedings as foreign main proceedings.

66.     Alternatively, in the event the Court determines that the Bermuda Proceedings are not eligible to be recognized as foreign main proceedings as the Petitioners believe they should, the Bermuda Proceedings should be recognized as foreign nonmain proceedings as defined in 11 U.S.C. § 1502(5) because, as set forth in the supporting Allitt Declaration and George Declaration, the VL Bermuda Debtors at a minimum maintain an establishment in Bermuda where non-transitory economic activity takes place.

**B.   Recognition of the Bermuda Proceedings and the Additional Relief Requested**

67.     The Bermuda Proceedings provide a centralized process to assert and resolve claims against the VL Bermuda Debtors and to make distributions to the VL Bermuda Debtors' legitimate creditors and insureds.   Relief and recognition are requested to protect the VL Bermuda Debtors' assets and maintain, as well as maximize, the value of the VL Bermuda Debtors' estates.

68.     During their tenure, the Petitioners have requested various documents from a variety of parties.   The Petitioners also believe the VL Bermuda Debtors' former directors hold important records necessary for the Petitioners to properly assess the operations of investments of the VL Bermuda Debtors.   For the Petitioners to effectively finalize the liquidation of the VL Bermuda Debtors, the Petitioners require access to those books and records, as well as those persons.

69.     The Bermuda Proceedings and the relief requested herein will protect the VL Bermuda Debtors' assets, provide the Petitioners with access to information necessary to

assemble the assets and claims of the VL Bermuda Debtors for administration, and enforce and protect the VL Bermuda Debtors' rights against third parties with respect to such assets.

70.     The VL Bermuda Debtors assets consist of complex financial products and ownership stakes in various illiquid assets.  Central administration of these assets is critical to any meaningful realization of value.

71.     The Petitioners believe, based on their investigation to-date and the Complaints, that the VL Bermuda Debtors' former directors had apparent conflicts of interest and that such management may have sacrificed the value of the VL Bermuda Debtors' assets to benefit the VL Bermuda Debtors' former directors.   While Petitioners have not yet concluded their investigation, there are numerous allegations from a variety of sources which indicate that certain of the VL Bermuda Debtors' former directors engaged in self-dealing transactions with little or no economic purpose beneficial to the VL Bermuda Debtors' themselves.

72.     Thus, the Petitioners now seek recognition of the Bermuda Proceedings as foreign main proceedings to garner and administer the VL Bermuda Debtors' assets located and held in the United States.

73.     The Petitioners also seek additional relief so that they may conduct discovery in order to ensure the identification of all of the VL Bermuda Debtors' assets and efficient administration of those assets.

## **NOTICE**

74.     Bankruptcy Rule 2002(q) governs notice of a petition for recognition of a foreign proceeding.   Contemporaneously herewith, the VL Bermuda Debtors filed the Application of Foreign Representatives for Order (I) Specifying Form and Manner of Service (ii) Scheduling Hearing on Recognition and Additional Relief and (III) Setting Deadline for Objections and Replies.   The Petitioners propose to provide service and notice of this Verified Petition   in

accordance with Rule 2002(q) and the procedures and deadlines specified in the proposed Order (I) Specifying Form and Manner of Service and Notice (ii) Scheduling Hearing on Recognition and Additional Relief and (III) Setting Deadline for Objections and Replies.  Nonetheless, the Petitiones will serve the U.S. Trustee upon filing.  The Petitioners respectfully submit that this constitutes sufficient service and notice of this Verified Petition.

## **CONCLUSION**

WHEREFORE, the Petitioners respectfully request that this Court enter an order recognizing the Bermuda Proceedings as foreign main proceedings, granting additional relief upon recognition substantially in the form annexed hereto as **Exhibit A**, and granting such other and further relief as to the Court appears just and proper.

Dated: April 12, 2021

REID COLLINS & TSAI LLP

/s/ *R. Adam Swick*
William T. Reid, IV
Angela J. Somers
R. Adam Swick
Yonah Jaffe
330 West 58th Street, Suite 403
New York, New York 10119
Tel.: (212) 344-5200
(aswick@reidcollins.com)

Craig A. Boneau (*pro hac vice* pending)
1301 S Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
Tel.: (512) 647-6100

*Counsel to the Foreign Representatives*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746 and Rule 1008 of the Federal Rules of Bankruptcy Procedure, Mark B. Allitt of KPMG Advisory Limited ("**KPMG**"), as one of the foreign representatives of VL Assurance (Bermuda) Limited ("**VL Assurance**"), Valor Group Ltd. ("**VGL**"), and Valor Management Ltd. ("**Valor Management**," and collectively with VL Assurance and VGL (the "**VL Bermuda Debtors**"), hereby declares as follows:

1.      I am a Managing Director of KPMG in Bermuda whose office is located at Crown House, 4 Par-la-Ville Road, Hamilton HM 08 Bermuda

2.      I am authorized to act as a duly appointed foreign representative of the VL Bermuda Debtors, debtors in foreign proceedings currently before the Supreme Court of Bermuda (Commercial Court).

3.      I have read the foregoing Verified Petition in Support of Applications for Recognition of Foreign Main Proceedings Pursuant to 11 U.S.C. § 1517 and Additional Relief (the "**Verified Petition**") and the exhibits thereto.

4.      I declare under penalty of perjury under the laws of the United States of America that I am informed and believe that the factual content in the Verified Petition and its exhibits are true and accurate to the best of my knowledge, information, and belief.

Executed this 12th day of April 2021 in Hamilton Bermuda.

Mark B. Allitt